[Cite as *State v. West*, 2018-Ohio-428.]

COURT OF APPEALS
MUSKINGUM COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. John W. Wise, P.J. |
| Plaintiff - Appellee | : | Hon. William B. Hoffman, J. |
| | : | Hon. Craig R. Baldwin, J. |
| -vs- | : | |
| | : | |
| JOSEPH W. WEST, JR. | : | Case No. CT2017-0022 |
| | : | |
| Defendant - Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:          Appeal from the Muskingum County
                                  Court of Common Pleas, Case No.
                                  CR2016-0197



JUDGMENT:                         Affirmed



DATE OF JUDGMENT:                 January 31, 2018



APPEARANCES:

For Plaintiff-Appellee                    For Defendant-Appellant

D. MICHAEL HADDOX                         DAVID A. SAMS
Prosecuting Attorney                      Box 40
                                          W. Jefferson, Ohio 43162
By: GERALD V. ANDERSON II
Assistant Prosecuting Attorney
27 North Fifth St., P.O. Box 189
Zanesville, Ohio 43702-0189

*Baldwin, J.*

**{¶1}** Defendant-appellant Joseph W. West, Jr. appeals his conviction and sentence from the Muskingum County Court of Common Pleas on one count each of rape and kidnapping. Plaintiff-appellee is the State of Ohio.

STATEMENT OF THE FACTS AND CASE

**{¶2}** On June 8, 2016, the Muskingum County Grand Jury indicted appellant on one count of rape in violation of R.C. 2907.02(A)(2), a felony of the first degree, and one count of kidnapping in violation of R.C. 2905.01(A)(4), also a felony of the first degree. At his arraignment on June 29, 2016, appellant entered a plea of not guilty to the charges.

**{¶3}** Subsequently, a jury trial commenced on February 21, 2017. The following testimony was adduced at trial.

**{¶4}** A.S., the approximately 23 year old victim in this case, testified that in June of 2015, he ended up in the Muskingum County Jail on a felony arson charge. He testified that appellant was assigned to the same pod in the jail. According to A.S., on July 21, 2015, appellant asked him if he would clean appellant's cell in exchange for soup. A.S. testified that he agreed to do so and that while he was cleaning on the floor of appellant's cell with his jumpsuit halfway down to keep cool, appellant grabbed him by the neck and "put my face against the glass wall and just like straddled me right there where I couldn't move and pulled my jumpsuit down and raped me." Trial Transcript at 236. A.S. testified that appellant penetrated his back side with his penis and that while he tried to fight, he could not because appellant had him pinned and A.S. was in a trance. A.S. testified that appellant told him not to move and that when appellant was done, he patted A.S. on the back and said "That was a good one, buddy." Trial Transcript at 245. A.S. further testified

that appellant had shut the door to the cell and that the window to the cell was covered with a towel so that no one could look inside. While A.S. tried to scream during the incident, he could not because he was in shock.

{¶5} After he was able to get away, A.S. went back to his cell and sat on the toilet because he felt that he had to go the bathroom. When asked if appellant had ejaculated, A.S. testified that he had. A.S. did not report the rape at that time because he was scared and embarrassed. He further testified that he did not tell any corrections officers what had happened on July 21st, 22nd or 23rd of 2015 and that although he went to a nurse on July 23, 2015, he did not tell the nurse what had happened because of fear and shame. He further testified that inmates who snitched sometimes got hurt by other inmates.

{¶6} A.S. finally, on July 26, 2016, told a corrections officer who he called Miss B what had happened because he felt comfortable with her and that he could trust her while he did not feel comfortable with other corrections officers. A.S. spoke with her and another female corrections officer in private and testified that he was upset and crying at the time. He testified that he did not tell the doctor who he saw on July 24, 2015 because "it's something that disturbing and disgusting, and it's just not right." Trial Transcript at 256. Appellant testified that he called his sister during the period of time from when the incident happened until when he talked to Miss B and eventually told her what had happened.

{¶7} On cross-examination, A.S. testified that he did not remember telling Miss B that he did not say anything while appellant was raping him. He testified that he tried to yell, but couldn't, and admitted to having been in jail fights before and being able to handle himself in a fight. A.S. remembered saying to Miss B that appellant had not ejaculated

and admitted that such statement was not consistent with his trial testimony.  A.S., during cross-examination, was unable to state when he told his sister about the rape. A.S. recalled speaking with his sister and telling her about being excited about getting out of jail and having a new start on life and that he felt better. He testified that he did not recall whether or not, during the period between July 21, 2015 and July 26, 2015, he told his sister that he had been raped.

{¶8}    Roberta Ann Boucher, a corrections officer at the Muskingum County Jail that appellant referred to as "Miss B", testified that it was not unusual to see a door window covered in the cells and that corrections officers could not see into the individual cells from their control center. She testified that A.S. initially approached her on July 25, 2015 and wanted to talk to her in private, which was not usual, but that they were in the process of changing shifts, so A.S. told her that he would talk to her the next night. A.S. told the corrections officers who escorted him to a room in the booking area that he was not comfortable speaking with a male and wanted to speak with Officer Boucher. A.S. spoke with her and another female corrections officer. The following testimony was adduced when Officer Bucher was asked what happened**:**

{¶9}    A.  He said that he needed to discuss something about an episode that had happened earlier in that week, that he was very embarrassed. He began to cry. We just kept reassuring him that whatever he needed to talk about was kept there. And he was adamant about he didn't want us to inform his mother or his sister or any of the men that worked—or that lived in that pod of what he wanted to discuss with us.

{¶10} Q.  And he's telling you that before he tells you what it is he wants to discuss?

**{¶11}** A. Yes. He was very adamant about not wanting this to get out.

**{¶12}** Q. And his demeanor, what was his demeanor when he's telling you this?

**{¶13}** A. A broken man, very nervous. Like, he was mentally and physically sick.

**{¶14}** Q. What did he tell you?

**{¶15}** A. He informed us that he had been raped by inmate Joseph West.

**{¶16}** Trial Transcript at 304-305.

**{¶17}** Officer Boucher testified that A.S. told her that he had not disclosed the rape to a doctor who he had seen earlier in the week because the doctor was a male and he was too embarrassed. She testified that A.S. was "tearful, mentally drained." Trial Transcript at 307. On cross-examination, Officer Boucher testified that the day room in the jail got loud and that if inmates enter a cell and shut the door to the cell, it did not cause her concern. Officer Boucher further testified that A.S. was adamant that he did not want his sister or mother to know what had happened, but admitted that she did not so specify in her report. She also admitted that she did not indicate in her incident report that A.S. had said that appellant had ejaculated, although she thought that she would have documented such statement if it had been made. On redirect, Officer Boucher testified that the she had never interviewed a rape victim before or prepared an incident report and that it was not part of her training. She further testified that A.S. told her that he needed to use the bathroom after the incident because he "immediately felt like he had to poop." Trial Transcript at 332. A.S. told her that he had bleeding from his rectum and Officer Boucher testified that she believed that she had documented the bleeding in her report. She testified that there were no cameras showing the inside of an inmate's jail cell.

{¶18} At trial, Detective Steven Welker of the Muskingum County Sheriff's Office testified that there was no video surveillance at the jail at time of the incident, but that equipment has since been added. He testified that he obtained the recorded phone calls from the jail between A.S. and his sister and that A.S. did not make any disclosures to his sister on July 22, 2015 or July 23, 2015 and that during the conversations on such dates, A.S. was positive and upbeat.  According to Detective Welker, the rape kit, which was taken beyond the 72 hour period for sex crime evidence kits, was inconclusive.  On redirect, Detective Welker testified that the telephones that A.S. would have been calling his sister from were in the day room and that other inmates would have been able to hear A.S.'s conversations with his sister.

{¶19} At the conclusion of the State's case, appellant's counsel made a Crim.R. motion for judgment of acquittal. The trial court denied the motion.

{¶20} At the conclusion of the evidence and the end of deliberations, the jury, on February 22, 2017, found appellant guilty of both counts. Pursuant to an Entry filed on March 6, 2017, the trial court merged the two counts and sentenced appellant to eleven years in prison. The trial court ordered that the sentence be served consecutively to the prison sentence that appellant already was serving. Appellant also was classified as a Tier III sex offender.

{¶21} Appellant now raises the following assignments of error on appeal:

{¶22} I. THE TRIAL COURT ERRED IN ALLOWING UNNECESSARY EVIDENCE OF THE VICTIM'S INTELLECTUAL IMPAIRMENT.

{¶23} II. THE RAPE AND KIDNAPPING CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

I

**{¶24}** Appellant, in his first assignment of error, argues that the trial court erred in allowing testimony of A.S.'s intellectual impairment. We disagree.

**{¶25}** Prior to A.S.'s testimony at trial, Jennifer Todd, an intervention specialist/social worker for special needs children, testified that she was employed by Eagle Wings Academy, a special needs school focusing on intensive behavior. She testified that all of their students had individualized education plans and that A.S. had been placed in her classroom his ninth grade year of high school. Todd testified that A.S. was in her class for approximately four and a half years and graduated in 2013. She testified that he had been born prematurely and addicted to crack cocaine. Over objection, she testified that A.S. functioned at the level of a student entering the seventh grade. According to Todd, A.S. took a longer time to process information and had cognitive delays.

**{¶26}** Appellant now contends that Todd's testimony was irrelevant and highly prejudicial and thus not admissible. Relevant evidence is admissible unless prohibited by an evidentiary rule, statute, or constitutional provision. Evid.R. 402. Evid.R. 403(A) provides that relevant evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury.

**{¶27}** We find that the probative value of the above testimony was not substantially outweighed by the danger of unfair prejudice. The testimony had significant probative value because it helped explain why A.S., who according to the testimony took

a long time to process information, delayed in reporting and why his ability to relate what had occurred during the incident was affected by his limited cognitive abilities.

{¶28} Appellant's first assignment of error is, therefore, overruled.

II

{¶29} Appellant, in his second assignment of error, contends that his convictions for rape and kidnapping were against the manifest weight of the evidence. We disagree.

{¶30} In determining whether a conviction is against the manifest weight of the evidence, the court of appeals functions as the "thirteenth juror," and after "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial ordered." *State v. Thompkins,* 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2nd 541, superseded by constitutional amendment on other grounds as stated by *State v. Smith*, 80 Ohio St.3d 89, 1997-Ohio-355, 684 N.E.2d 668. Reversing a conviction as being against the manifest weight of the evidence and ordering a new trial should be reserved for only the "exceptional case in which the evidence weighs heavily against the conviction." *Id.*

{¶31} The weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230, 231, 237 N.E.2d 212 (1967). The trier of fact "has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page." *Davis v. Flickinger*, 77 Ohio St.3d 415, 1997-Ohio-260, 418, 674 N.E.2d 1159. The jury as the trier of fact was free to accept or reject any and all of the evidence offered by the

parties and assess the witness's credibility. "While the jury may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence." *State v. Craig,* 10th Dist. No. 99AP–739, 1999 WL 29752 (Mar 23, 2000) citing *State v. Nivens*, 10th Dist. No. 95APA09–1236, 1996 WL 284714 (May 28, 1996). Indeed, the jury need not believe all of a witness' testimony, but may accept only portions of it as true. *State v. Raver*, 10th Dist. No. 02AP–604, 2003–Ohio–958, ¶ 21, citing *State v. Antill*, 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964).

**{¶32}** Appellant initially points out that there was no physical evidence, whether injury, DNA or otherwise, and argues that there were inconsistencies and contradictions in A.S.'s testimony that cast doubt on his credibility. Appellant argues that A.S. did not struggle or yell out during the assault. However, A.S. testified that he was unable to fight appellant off because appellant had him pinned and everything happened very quickly. He testified at he tried to yell, but could not. While, as appellant argues, there were no witnesses, there was testimony that appellant closed the door to his cell and that the window to appellant's cell was covered with a towel. There also was testimony that the day room was very loud and that there was no video surveillance equipment.

**{¶33}** Appellant also questions A.S.'s credibility on the basis that A.S. delayed in reporting the incident. At trial, A.S. testified that he did not immediately report what had happened because he was embarrassed and scared and that snitching was not looked on favorably and could lead to getting hurt. Next, appellant argues that A.S. did not initially report that appellant had ejaculated and may have denied it. During his testimony, A.S. admitted that when he talked to Detective Welker, he did not admit that appellant

had ejaculated, but testified that he did not want to tell another man about the ejaculation. He maintained at trial that he had told Officer Boucher about the ejaculation. While she did not include the ejaculation in her report, she testified that she did not recall asking A.S. if appellant had ejaculated and that she had never interviewed a rape victim before. She did testify that A.S. had told her that he needed to use the bathroom immediately after the rape because he needed to defecate and that he was bleeding from his rectum.

**{¶34}** Appellant also stresses that A.S. did not initially report the rape to the jail nurse, doctor or his sister. When asked why he did not tell the nurse, A.S. testified that he was scared and ashamed. He testified that he did not tell the doctor because the incident was disturbing and disgusting. While appellant did eventually tell his sister, he was unable to recall when he did so. There was testimony that when A.S. went to talk to Officer Boucher, he was crying and was insistent that he did not want his mother or sister to know due to embarrassment. Moreover, there was testimony at trial that the phones were in a public area so that any conversations that appellant had with his sister could have been overheard by his fellow inmates.

**{¶35}** In short, we find that the evidence presented, if believed, proved that appellant committed rape and kidnapping beyond a reasonable doubt and that the jury did not lose its way in convicting appellant. The jury, as trier of fact, was in the best position to assess A.S.'s credibility and clearly found his testimony credible.

**{¶36}** Appellant's second assignment of error is, therefore, overruled.

**{¶37}** Accordingly, the judgment of the Muskingum County Court of Common Pleas is affirmed.


By: Baldwin, J.

John Wise, P.J. and

Hoffman, J. concur.